## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VARIAN MEDICAL SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-871-LPS |
| | ) | |
| ELEKTA AB, ELEKTA HOLDINGS U.S., | ) | |
| INC., ELEKTA INSTRUMENT AB, and | ) | |
| ELEKTA INC., | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

Presently pending before the Court in this patent infringement suit are two motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motions"). Defendants Elekta Holdings U.S. and Elekta Inc. (the "U.S. Defendants") seek dismissal of certain of Plaintiff Varian Medical Systems, Inc.'s ("Plaintiff") claims against them for induced, contributory and willful infringement. (D.I. 11) Defendants Elekta AB and Elekta Instrument AB's (the "Foreign Defendants" and, collectively with the U.S. Defendants, "Elekta" or "Defendants") motion to dismiss seeks dismissal of Plaintiff's claims against them for induced and contributory infringement. (D.I. 41) For the reasons set forth below, the Court recommends that Defendants' Motions be GRANTED in their entirety, with leave to amend.

## I.     BACKGROUND

Plaintiff commenced this action on September 25, 2015. (D.I. 1) In its Complaint, Plaintiff accuses Defendants of direct, indirect and willful infringement of the one patent-in-suit, United States Patent No. 6,888,919 (the "'919 patent"). (*Id.* at ¶¶ 33-41) The Complaint identifies Defendants' "medical devices, related software, and related services" as infringing the

'919 patent, but it specifically names only one exemplary accused product: "the Gamma Knife Icon" (also referred to herein as the "Device"). (*Id.* at ¶ 35)  The Gamma Knife Icon is the latest in a line of radiation treatment devices that Defendants have manufactured, marketed and sold in the United States since 1987 under the "Gamma Knife" trademark.  (*Id.* at ¶¶ 29-30)  These Gamma Knife devices are said to use a radiation source (cobalt-60) in order to generate and deploy gamma radiation to treat neuropathologies (e.g., brain tumors).  (*Id.* at ¶ 29)  What distinguishes the Gamma Knife Icon from previous iterations is its inclusion of a built-in imager and a "cone beam CT radiation source[.]"  (*Id.* at ¶ 30)  The imager is mounted on an arm to allow rotation around the patient, in order to help doctors identify the position, size and shape of a brain tumor.  (*Id.*)  An image of Gamma Knife Icon[1] is reproduced below:



On October 2, 2015, Chief Judge Leonard P. Stark referred this case to the Court to resolve any matters relating to scheduling, as well as to resolve any motions to dismiss, stay or

---

[1]      This image is taken from www.careforthebrain.com, an Elekta website that is referenced prominently in the Complaint.  *See* LEKSELL GAMMA KNIFE ICON, ELEKTA AB, http://www.careforthebrain.com (last visited July 5, 2016); *see also* (D.I. 1 at ¶¶ 31, 36).

transfer venue.  (D.I. 7)  In lieu of answering the Complaint, the U.S. Defendants filed their

motion to dismiss on November 19, 2015.  (D.I. 11)  Briefing on the U.S. Defendants' motion

was complete on December 17, 2015.  (D.I. 15)  At the time, the Foreign Defendants, which are

based in Sweden, (D.I. 1 at ¶¶ 5, 7), had not yet been served, (D.I. 12 at 1 n.1).

      The Court later held a Case Management Conference on January 25, 2016.  A Scheduling

Order was entered on February 1, 2016.[2]  (D.I. 28)

      Thereafter, the Foreign Defendants were served.  (D.I. 39; D.I. 40)  The Foreign

Defendants then filed their own motion to dismiss, pursuant to Rule 12(b)(6).  (D.I. 41)  In that

motion, the Foreign Defendants incorporated by reference and expressly relied upon the

arguments made in all but two sections of the U.S. Defendants' briefing regarding the U.S.

Defendants' motion to dismiss:  Section IV.C of the U.S. Defendants' opening brief, (D.I. 12 at

9-11), and Section II.B of the U.S. Defendants' reply brief, (D.I. 15 at 6-8).  (D.I. 41)[3]

## II.    STANDARD OF REVIEW

      The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil

Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is

entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  When presented with a Rule 12(b)(6) motion to

---

[2]      The U.S. Defendants had also filed a motion seeking transfer of venue (to the United States District Court for the Northern District of Georgia) by the time of the Case Management Conference.  (D.I. 19)  During the Case Management Conference, the Court indicated that it would address the motion to transfer venue before it addressed the U.S. Defendants' motion to dismiss.  (D.I. 33 at 16)  On June 8, 2016, the Court issued a Memorandum Order denying the motion to transfer venue.  (D.I. 45)

[3]      The Foreign Defendants' motion to dismiss otherwise contained no argument unique to their circumstance; for that reason, citations herein will be only to the briefing filed in conjunction with the U.S. Defendants' motion to dismiss.

dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11 (citation omitted). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III.   DISCUSSION

In the instant Motions, the Defendants collectively challenge the adequacy of the Plaintiff's claims for indirect infringement (that is, its claims for induced infringement and contributory infringement), while the U.S. Defendants further seek dismissal of Plaintiff's claim against them for willful infringement. (D.I. 11; D.I. 41)[4] The Court will first address the allegations as to indirect infringement, and then will address the willful infringement claim.

---

[4]    The Complaint also alleges direct infringement by all Defendants. (D.I. 1 at ¶ 35) With their Motions, Defendants do not explicitly challenge the sufficiency of the direct infringement allegations. (*See, e.g.*, D.I. 11; D.I. 41; *see also* D.I. 12 at 1; D.I. 13 at 1) Thus, the Court's decision here addresses only claims of induced, contributory and willful infringement.

A.      **Indirect Infringement**

1.      **Elements of Indirect Infringement Claims**

In the Complaint, Plaintiff alleges both induced and contributory infringement against all

Defendants.[5] As to a claim for induced infringement, 35 U.S.C. § 271(b) states that "[w]hoever

actively induces infringement of a patent shall be liable as an infringer." In order to prove

induced infringement, the patentee "must show direct infringement, and that the alleged infringer

knowingly induced infringement and possessed specific intent to encourage another's

infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal

quotation marks and citations omitted); *Symantec Corp. v. Comput. Assocs. Int'l, Inc.*, 522 F.3d

1279, 1292-93 (Fed. Cir. 2008) ("Thus, 'inducement requires evidence of culpable conduct,

*directed to encouraging* another's infringement, not merely that the inducer had knowledge of

the direct infringer's activities.'") (emphasis added) (citation omitted). With regard to

contributory infringement, under 35 U.S.C. § 271(c) a patentee must demonstrate that the alleged

contributory infringer has sold, offered to sell or imported into the United States "a component of

a patented machine, manufacture, combination or composition, or a material or apparatus for use

in practicing a patented process . . . knowing the same to be especially made or especially

adapted for use in an infringement of such patent, and not a staple article or commodity of

---

[5]      Plaintiff's allegations are muddied a bit by the fact that the Complaint asserts that
it is alleging contributory infringement "and/or" induced infringement. (D.I. 1 at ¶ 35) This
Court generally disfavors the use of the phrase "and/or" in pleading indirect infringement in this
way, because it tends not to provide "a clear indication as to whether a plaintiff intends to plead
induced infringement, contributory infringement or both." *Pragmatus AV, LLC v. Yahoo! Inc.*,
Civil Action No. 11-902-LPS-CJB, 2012 WL 6044793, at *13 n.5 (D. Del. Nov. 13, 2012).
Here, the Court assumes that Plaintiff intends to plead both, but in any amended pleading,
Plaintiff should refrain from using this phrase "and/or" in setting out its claims of indirect
infringement.

commerce suitable for substantial noninfringing use[.]" *See also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).

To state a claim for either induced or contributory infringement, Plaintiff must, *inter alia*, sufficiently allege some underlying act of direct infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 & n.3 (2014). That is, while Plaintiff need not identify a specific direct infringer by name, it must plead "facts sufficient to allow an inference that at least one direct infringer exists." *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 394 (D. Del. 2013) (quoting *Aeritas, LLC v. Alaska Air Grp., Inc.*, 893 F. Supp. 2d 680, 683 (D. Del. 2012)). And while Plaintiff need not prove its case at this stage, "what is required is that the facts pleaded, 'when considered in their entirety and in context, lead to the common sense conclusion that'" a claim in a patent is being infringed. *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, Civil Action No. 13-2052-LPS, 2014 WL 4675316, at *3 (D. Del. Sept. 19, 2014) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339, 1343 (Fed. Cir. 2012)).

In addition to sufficiently pleading an act of direct infringement by a third party, a claim for indirect infringement "requires knowledge of the existence of the patent that is [allegedly] infringed." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011); *see also Walker Dig., LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012). At the pleading stage, a plaintiff need only allege facts allowing the reasonable inference that the defendant had knowledge of the patent-in-suit in the key time period. *See MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229 (D. Del. 2012).

### 2.    Defendants' Arguments

Defendants advance a number of arguments as to why Plaintiff's indirect infringement claims are deficient under Rule 12(b)(6).  Some of these arguments are related to (or are offshoots of) each other.  The Court will address each below, focusing primary attention on two of the arguments:  (1) that Plaintiff did not adequately plead any underlying act of direct infringement of the '919 patent by a third party; and (2) that Plaintiff did not adequately plead the U.S. Defendants' pre-suit knowledge of the '919 patent.[6]

### a.   Plaintiff fails to allege any underlying act of direct infringement

Defendants contend that the Complaint is devoid of facts from which the Court could "plausibly infer a predicate act of direct infringement by a third party."  (D.I. 12 at 7)  Instead, Defendants argue, Plaintiff "alleges only that the [Defendants] generally advertise, market, and demonstrate the Gamma Knife Icon to customers[,]" as opposed to, for example, alleging that "any customer has, in fact, used the Gamma Knife Icon," let alone that it did so in an infringing manner.  (*Id.*)

In pushing back against this argument, Plaintiff points to two factual assertions in paragraph 36 of the Complaint:  (1) that "Elekta . . . demonstrates and instructs *customers and potential customers to use Gamma Knife Icon* in an infringing manner at trade shows, consultations, training programs and otherwise," and (2) that "the Gamma Knife Icon was especially designed, made and/or adapted for *use* in an infringing manner."  (D.I. 1 at ¶ 36

---

[6]     The Foreign Defendants do not join in the argument as to pre-suit notice of the patent-in-suit, though they join in all other of the U.S. Defendants' arguments. (D.I. 41)  Thus, the Court will assume, for purposes of resolving the Motions, that the allegations of pre-suit knowledge of the patent are sufficient as to both Foreign Defendants.

(emphasis added) (cited in D.I. 13 at 7)) From these assertions, Plaintiff argues, "[t]he Court may reasonably infer both the general identity of the third party infringers—Elekta's customers and potential customers—and the nature of their infringement—the use of the Gamma Knife Icon in the manner taught by Elekta." (D.I. 13 at 7) For the two reasons set out below, the Court disagrees with Plaintiff that these allegations plausibly suggest that a third party has directly infringed the patent.

First, the Complaint does not adequately allege that *any third party actually used* the accused device. To be fair, the Complaint does at least make it clear who the general group of *possible* direct infringers are said to be here: "customers and potential customers" who have attended "trade shows, consultations, [and] training programs" and who have received "demonstrat[ions] and "instruct[ions]" from Defendants' representatives as to how to use the Gamma Knife Icon. (D.I. 1 at ¶ 36) But the Complaint stops well short of stating that any of this group of possible direct infringers ever actually purchased the Gamma Knife Icon (such that one might reasonably infer they went on to use it in an infringing manner).[7] Nor does the Complaint reasonably suggest some other scenario in which these third parties in fact have used the accused product in an infringing way (e.g., that a customer actually did so in some *de minimis* way during one of these unspecified trade shows, consultations or training programs).[8] *See Execware, LLC*

---

[7]     Indeed, in its reply brief, Defendants suggest that the Gamma Knife Icon did not obtain FDA clearance until shortly before the Complaint was filed here, and that the product was never installed or operated at a customer site by the time of the Complaint's filing. (D.I. 15 at 1, 4-5)

[8]     The fact that Plaintiff additionally alleges that "the Gamma Knife Icon was especially designed, made and/or adapted for use in an infringing manner[,]" (D.I. 1 at ¶ 36), is not helpful to it here. Such an allegation would be a nullity, for purposes of pleading contributory infringement, if insufficient facts were pleaded to infer that Defendants' customers

*v. Staples, Inc.*, Civil Action No. 11-836-LPS-SRF, 2012 WL 6138340, at *3 (D. Del. Dec. 10, 2012) (finding that a plaintiff had failed to plausibly allege indirect infringement because it had not sufficiently alleged that a third party directly infringed the patent-in-suit, where the amended complaint alleged that the defendant had "induced and contributed to infringement by 'offering to its customers use of its software,'" with the intent that the software be used to infringe, but where plaintiff nowhere alleged that the defendant's "customers actually used the accused software or that [the defendant] caused its customers to directly infringe"), *adopted by* 2013 WL 171906 (D. Del. Jan. 16, 2013).[9]

Second, the allegations are also defective because—even if the third party "customers and potential customers" used the product (at or after any of these sales events)—the Complaint does not sufficiently articulate *how* this use of the product can be said to constitute infringement of at least claim 1 of the patent-in-suit.[10] For example, the apparatus claimed in claim 1 comprises four elements, two of which are "a first therapeutic radiation source attached to a first gantry"

---

ever *actually used* the accused Device at all.

[9]   *See also Pragmatus Telecom, LLC v. Ford Motor Co.*, Civil Action No. 12-92-RGA, 2012 WL 2700495, at *1 & n.3 (D. Del. July 5, 2012) (concluding, on a motion to dismiss, that "there [were] no allegations of direct infringement accompanying the allegations of indirect infringement[]" because the allegation that the defendant "intended that its customers . . . 'go on to [the defendant's] website' to infringe the patents[, was] not the same thing as saying '[defendant's] customers infringe the patents by using the websites'") (citation omitted); *ONDEO Nalco Co. v. EKA Chems., Inc.*, No. Civ.A.01-537-SLR, 2002 WL 1458853, at *1 & n.3 (D. Del. June 10, 2002) (finding an induced infringement claim insufficiently pleaded because the plaintiff failed to allege direct infringement by a third party, where the complaint only averred that the defendant induced infringement "'by selling its products, including the 8692 product, and in *instructing and encouraging* others in the *use of its products*, including the 8692 product'") (emphasis added) (citations omitted).

[10]   In the Complaint, Plaintiff alleged that Defendants infringe "at least Claim 1" of the '919 patent.  (D.I. 1 at ¶ 35)

9

and "a second gantry that is rotatable, the second gantry is attached to the first gantry[.]"  ('919

patent, col. 8:50-59)  And while the Complaint does appear to allege that the "first therapeutic

radiation source" found in the accused product is cobalt-60, (D.I. 1 at ¶ 29), from what is

pleaded, it is not clear enough as to how it is plausible that this radiation source is "attached to a

first gantry."  Moreover, the Complaint does not plead enough to allow the plausible inference

that any such first gantry is "attached to" a "second gantry."  *See Bonutti Skeletal Innovations*

*LLC v. Smith & Nephew, Inc.*, Civil Action No. 12-1111-GMS, 2013 WL 6058472, at *1 n.5 (D.

Del. Nov. 18, 2013) (finding that plaintiff's bare "[a]llegations that [defendant] knew of

[plaintiff's] patents and of its customers' use of [defendant's] products do not suffice to establish

that [defendant] also knew that its customers' use of [defendant's] own products would amount

to infringement of [plaintiff's] patents[]" and thus granting the motion to dismiss the induced

infringement claim); *cf. Atlas IP LLC v. Pac. Gas & Elec. Co.*, Case No. 15-cv-05469-EDL,

2016 WL 1719545, at *4 (N.D. Cal. Mar. 9, 2016) (granting a motion to dismiss a claim for

direct infringement of an apparatus claim where, *inter alia*, "the complaint entirely fail[ed] to

address [a] necessary element of claim 1"); *Largan Precision Co, Ltd v. Genius Elec. Optical*

*Co., Ltd.*, Case No. 13-cv-02502-WHO, 2013 WL 5934698, at *4 & n.3 (N.D. Cal. Nov. 4, 2013)

(denying a motion to dismiss the indirect infringement claims where "[t]he letter and claim charts

[referenced in the compliant] appear[ed] to explain in detail how Genius's lenses, incorporated

into the two identified Apple products, read on the [apparatus] claims of the patents-in-suit.").[11]

---

[11]      The Court also addresses here two other of Defendants' arguments regarding
deficiencies in the Complaint, which relate to the above finding.

    First, it agrees with Defendants' argument, (D.I. 12 at 11-12), that the Complaint's failure
to plausibly allege *how* a third party's use of the accused product infringes the patent also shows

> ### b.   Plaintiff fails to allege pre-suit knowledge of the '919 patent

The U.S. Defendants further contend that the Complaint lacks plausible allegations that

they had pre-suit knowledge[12] of the '919 patent.  (D.I. 12 at 9-11)  In the relevant portion of the

Complaint, Plaintiff alleges that "Elekta"—a term the Complaint uses to generically refer to all

four of the named Defendants at one time—"has had knowledge of the '919 Patent since":

---

why Plaintiff has not sufficiently pleaded Defendants' specific intent to induce infringement. Although the Complaint does allege that "Elekta" marketed the Gamma Knife Icon by describing and depicting use "in an infringing manner" on its website and by demonstrating and instructing customers how to use the product "in an infringing manner" at trade shows and other events, (D.I. 1 at ¶ 36), if Plaintiff does not plead sufficient facts to show *how it is* that such use would actually infringe the patent-in-suit, then it cannot have sufficiently alleged that any such acts of "encouragement" were specifically intended to further *patent infringement*. *See Neology, Inc.*, 2014 WL 4675316, at *6; *see also MONEC Holding AG*, 897 F. Supp. 2d at 234 ("Allegations of the marketing activities of the Defendants do not, on their own, demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement.").

Second, Defendants also argued that the Complaint failed to allege any facts that relate to the following elements of a contributory infringement claim:  (1) that the Defendants knew that the accused product was "especially made or especially adapted for use in an infringement" and (2) that they knew that the product was "not a staple article or commodity of commerce suitable for substantial noninfringing use." (D.I. 12 at 12-14)  It is true that the Complaint does not specifically address those elements, other than to parrot back their language, (*see* D.I. 1 at ¶ 36), and that it would be better if it had done more than that.  But claim 1, the only claim clearly asserted in the Complaint, is an apparatus claim.  If the Court was clear enough on how use of the accused product could plausibly read on the elements of that claim, it might have been able to infer that these components of a contributory infringement claim were satisfied here.

[12]    The U.S. Defendants' argument here is focused on the failure to sufficiently plead pre-suit (not post-suit) knowledge of the patent.  (D.I. 15 at 6-8)  Had the Complaint otherwise sufficiently alleged the elements of indirect infringement claims against Defendants, Plaintiff could have proceeded forward with regard to post-suit damages as to those claims.  *SoftView LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *7 (D. Del. July 26, 2012) ("In the Court's view, an accused infringer is on notice of the patent(s)-in-suit once an initial pleading identifies the patents-in-suit, and a patentee that successfully proves the remaining legal elements of indirect inf[r]ingement is entitled to recover for any post-filing indirect infringement of those patents.").  Accordingly, the Court will limit its analysis here to those allegations relating to the U.S. Defendants' asserted pre-suit knowledge of the patent.

11

> [A]t least April 5, 2006, as evidenced by the USPTO's [the United
> States Patent and Trademark Office's] Non-Final Rejection of
> claims of patent application no. 11/220,110 [the "'110 application"]
> in light of the '919 Patent and Elekta's remarks against anticipation
> in its September 21, 2006 Amendment in response thereto, or
> alternatively, since March 20, 2012, as evidenced by citation to the
> '919 Patent in connection with the USPTO's issuance of a Notice of
> Allowance for Elekta's U.S. Patent No. 8,218,718 [the '718 patent].

(D.I. 1 at ¶ 39; *see also id.* at ¶ 1)  As it turns out, the "Elekta" entity that put forward the '110

application and the September 21, 2006 Amendment, and that also owns the '718 patent, is

Elekta AB.  (D.I. 12 at 9 & exs. A, B)[13]

In the September 21, 2006 Amendment, Elekta AB discussed the '919 patent in some

detail, explaining why the patent did not anticipate certain claims set out in the '110 application.

(D.I. 13, ex. A at 9-11)  The Court has no doubt that citation to this document demonstrates that

Elekta AB then had knowledge of the patent, *see Intellectual Ventures I LLC v. AT&T Mobility

LLC*, 69 F. Supp. 3d 461, 465 (D. Del. 2014), and indeed, that is not disputed here.

But Elekta AB is not the U.S. Defendants.  The three are related entities, to be sure—U.S.

Defendant Elekta Holdings U.S. is a wholly-owned subsidiary of Elekta AB, and U.S. Defendant

Elekta, Inc. is, in turn, a wholly-owned subsidiary of Elekta Holdings U.S.  (D.I. 1 at ¶¶ 6, 8)  But

in this circumstance, "knowledge of a patent by a parent corporation is not necessarily imputed to

[its] subsidiar[ies]."  *McRO, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113, 1125

---

[13]     These facts—that Elekta AB is the entity that filed the '110 application, that filed
the September 21, 2006 Amendment, and that owns the '718 patent—are not disputed in the
briefs.  But it is important to note if it *was* unclear as to which of the four Defendant entities
these allegations related to, that would simply highlight another failing of the Complaint.  If a
plaintiff simply files suit against four separate defendants and then states that it is going to lump
all four defendants together in a complaint by referring to them by one name (here, "Elekta"),
that practice tends to obscure which Defendants are said to have done and known what, and
when.  *See Neology, Inc.*, 2014 WL 4675316, at *7.

(C.D. Cal. 2013) (citation omitted).  Thus, Plaintiff needs to set out more than just the bare fact

of the parent/subsidiary relationship in order to make out a plausible claim that *the U.S.*

*Defendants* had the requisite knowledge of the patent-in-suit as of April 2006 or thereafter.  *See*

*SoftView LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *5 (D. Del. July 26,

2012) (concluding that the allegation that a defendant had pre-suit knowledge of a patent because

its subsidiary "had cited the published application of the parent application of the

[patent-at-issue] during the prosecution of one of [the subsidiary's] own patents[,]" did not,

"standing alone[,]" constitute a plausible basis to infer the defendant's knowledge of the patent);

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*, Civil Action No. 11-1175-RGA, 2012 WL

6968938, at *1 (D. Del. July 18, 2012); *cf. Semiconductor Energy Lab. Co. Ltd. v. Chi Mei*

*Optoelectronics Corp.*, 531 F. Supp. 2d 1084, 1115 (N.D. Cal. 2007).

Plaintiff argues that it has met that burden, first by noting that it alleged that all four

named Defendants operate under the same trade name ("Elekta").  (D.I. 13 at 10 (citing D.I. 1 at

¶ 9))  That fact is certainly something that can be used to help bolster a claim that the U.S.

Defendants' knew what Elekta AB knew.  But it cannot be enough on its own.  *Cf. In re Wash.*

*Mut., Inc.*, Bankruptcy No. 08-12229 (MFW), 2010 WL 3238903, at *14 (Bankr. D. Del. Aug.

13, 2010) ("Furthermore, a common trade name is frequently used in parent-subsidiary

relationships and is not a basis for disregarding the corporate form.") (citing *Bagel Bros. Maple,*

*Inc. v. Ohio Farmers, Inc.*, 279 B.R. 55, 67 (W.D.N.Y.2002)).

Plaintiff's second line of argument is to point to other aspects of the "close-knit

relationship" between the U.S. Defendants and Elekta AB.  (D.I. 13 at 10-12)  Among the facts

that Plaintiff lists here are that:  (1) Sverker Glans, who served as an Executive Officer of Elekta

AB from 2004 through at least October 2007 was also, as of March 2007, the secretary of both U.S. Defendants; (2) Joseph Jachinowski, who served as an Executive Officer of Elekta AB from October 2005 through at least October 2008, was, as of at least March 2008, also the Chief Executive Officer of both U.S. Defendants; and (3) the current Chief Executive Officer of the U.S. Defendants, Jay Hoey, was once an Executive Officer of Elekta AB as early as 2008.  (D.I. 13 at 10-12; D.I. 15 at 7)

The problem with these additional allegations (even were they sufficient to demonstrate the requisite pre-suit knowledge of the patent on the part of the U.S. Defendants)[14] is that they are nowhere found in the Complaint.  Instead, they are raised (in some detail) for the first time in Plaintiff's answering brief.  Plaintiff attempts to get around this by suggesting that the Court may simply take judicial notice of these numerous facts, since they are drawn from filings made with the United States Securities and Exchange Commission ("SEC") or from publicly-available corporate registration records of the Office of the Georgia Secretary of State.  (D.I. 13 at 11 nn.3-4 (citing cases))  And it is true that this Court has taken judicial notice of certain of the content of these kinds of records in the past, *see, e.g., In re Chemed Corp., S'holder Derivative Litig.*, Civil

---

[14]      The Court is skeptical that they would be.  Courts have tended to require more than just an overlap of employees when considering allegations regarding knowledge of a patent. That is, they require sufficient facts to infer that the overlapping employee in question had reason to know of the patent and that this knowledge would have come into play at the company to which knowledge would be imputed. *See ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 458-59 (D. Del. 2014) (concluding, as to the willful infringement claim, that the plaintiff had "not pled sufficient facts to successfully allege [defendant] Juniper's pre-suit knowledge of the patents-in-suit"—despite alleging that Juniper's current in-house intellectual property counsel had previously worked for a third-party company that had owned the patents-in-suit during her employment there, and that the counsel had marketed the patents-in-suit to plaintiff during that prior employment—where the complaint otherwise failed to allege any facts "linking the knowledge [the counsel] may have acquired from her work at [the third-party company] to her work at Juniper[]"); *cf. Neology, Inc.*, 2014 WL 4675316, at *6.

Action No. 13-1854-LPS-CJB, 2015 WL 9460118, at *1 n.2 (D. Del. Dec. 23, 2015) (SEC filings); *Zomolosky v. Kullman*, 70 F. Supp. 3d 595, 607 n.16 (D. Del. 2014) (a corporate charter), and that Federal Rule of Evidence 201(b)(2) permits courts to take notice of such records at any stage in a proceeding, *see* Fed. R. Evid. 201(d).

But the Court is hesitant to do so here in the manner suggested by Plaintiff. It seems like one thing to take judicial notice of a document like an SEC filing, for example, in order to amplify the factual basis for a claim already set out in some detail in a pleading. But it feels like quite another for an important element of a claim to be deemed satisfied entirely due to a large number of extra-complaint, judicially-noticed facts. At some level, doing so seems at odds with the idea that the factual basis of a plausible claim should actually be set out *in* a pleading. *Cf. Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1350 (C.D. Cal. 2014); *In re Turbodyne Techs., Inc. Sec. Litig.*, No. CV9900697MMMBQRX, 2000 WL 33961193, at *10 (C.D. Cal. Mar. 15, 2000).

The Court need not resolve this issue here, as (in light of the remainder of this Report and Recommendation) Plaintiff will need to re-plead as to these claims. If it does so, it should include all of the facts said to support its theory of pre-suit notice of the patent by the U.S. Defendants *in* that amended pleading itself.

## B.   Willful Infringement

In addition to its induced and contributory infringement claims, Plaintiff alleges that Defendants have engaged and continue to engage in willful infringement of the '919 patent. (D.I. 1 at ¶ 40) The sufficiency of this allegation is now challenged by the U.S. Defendants.

Since briefing on these Motions was completed, the Supreme Court of the United States

15

issued its decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), in which it rejected the Federal Circuit's then-controlling two-part test for proving a claim of willful infringement. That two-part test had required a patentee to prove by clear and convincing evidence that:  (1) the infringer had acted despite an objectively high likelihood that its actions constituted patent infringement, without regard to the state of mind of the accused infringer, and (if objective recklessness was established), that (2) this risk was either known to the infringer or was so obvious that it should have been known. *Halo*, 136 S.Ct. at 1930 (citations omitted). *Halo* emphasized that the district court instead should exercise its discretion as provided in 35 U.S.C. § 284 in order to determine whether to award enhanced damages, and that the focus should be on whether the patentee has shown that this is an "egregious case[] of misconduct beyond typical infringement." *Id.* at 1932-36; *see also id.* at 1936 (Breyer, J., concurring) ("[T]he Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more*.") (emphasis in original); *PPC Broadband, Inc. v. Corning Optical Commc'ns. RF, LLC*, 5:11-cv-761 (GLS/DEP), 2016 WL 3365437, at *5 (N.D.N.Y. June 16, 2016).  But the *Halo* Court explained that the patentee need simply prove willfulness by a preponderance of the evidence, and that an independent showing of objective recklessness was not required; instead, the "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo*, 136 S. Ct. at 1932-34; *see also PPC Broadband, Inc.*, 2016 WL 3365437, at *5.

The U.S. Defendants contend that "Varian alleges the elements of a willful infringement claim only generally," and "has provided no facts and no context for its willful infringement

claims." (D.I. 12 at 15)  Plaintiff, for its part, does not really directly respond to this contention. Instead, it states only that it "has properly stated its claims for willful infringement at the pleading stage, and should be afforded the opportunity to prove its claims through discovery and the normal course of proceedings." (D.I. 13 at 19-20; *see also* D.I. 15 at 10)

Here, the Court concludes that Plaintiff's Complaint clearly falls short of the pleading requirements.  In paragraph 40 of the Complaint, Plaintiff does little more than provide a formulaic recitation of the pre-*Halo* elements of a willful infringement claim—that the U.S. Defendants' alleged infringement has and continues to be "willful and deliberate[]"; that they continued their actions "despite an objectively high likelihood" that those actions constitute infringement; that they "know[] or should have known about [the] risk of infringing the '919 patent[]"; and that, despite such knowledge, they acted "with both objective and subjective reckless disregard for the infringing nature of [their] activities." (D.I. 1 at ¶ 40)  In that paragraph or otherwise, the Complaint does not sufficiently articulate how the U.S. Defendants' making, using or offering for sale of the Gamma Knife Icon actually amounted to an egregious case of infringement of the patent. *See infra* Section III.A.2.a.  Plaintiff's pre-suit and post-suit willful infringement claim against the U.S. Defendants is thus subject to dismissal.[15]

---

[15]     *Cf. Neology, Inc.*, 2014 WL 4675316, at *9 (recommending dismissal of a willful infringement claim where the pleadings insufficiently indicated how the defendant knew or should have known that certain of its technology, which was referenced in pre-suit communications between it and the plaintiff, "is or was said to infringe the patents-in-suit"); *McRo, Inc. v. Rockstar Games, Inc.*, Civil Action No. 12-1513-LPS-CJB, 2014 WL 1051527, at *7 (D. Del. Mar. 17, 2014) (dismissing a willful infringement claim where the pleadings failed to "plead sufficient specific factual matter about what Defendants or others were actually doing in order to plausibly indicate that, at any point, Defendants were or should have been aware that they were committing patent infringement"), *adopted by* 2014 WL 1677366 (D. Del. Apr. 24, 2014); *cf. Hand Held Prods., Inc. v. Amazon.com, Inc.*, C.A. No. 12–CV–00768–RGA–MPT, 2013 WL 507149, at *7 (D. Del. Feb. 6, 2013) (finding willful infringement allegations sufficient

### C.      Opportunity to Amend

In its briefing, Plaintiff requests leave to amend its Complaint if the Court grants

Defendants' Motions in whole or in part. (D.I. 13 at 20)  It is within the Court's discretion to

grant leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Because leave to amend

should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), and because it is not

clear at this stage that amendment would cause undue prejudice or would be futile, the Court

recommends that Plaintiff be given leave to file one further amended complaint addressing the

deficiencies outlined above. *See In re Caterpillar Inc. Derivative Litig.*, Civil Action No.

12-1076-LPS-CJB, 2014 WL 2587479, at *15 (D. Del. June 10, 2014).

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that all Defendants' Motions be

GRANTED to the extent they seek dismissal of Plaintiff's induced and contributory infringement

claims.  The Court further recommends that the U.S. Defendants' Motion be GRANTED to the

extent it seeks dismissal of Plaintiff's willful infringement claim.  The Court also recommends

that Plaintiff be given the ability to file one further amended complaint addressing these

deficiencies.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the

---

where a plaintiff's pleadings not only demonstrated that the defendants had prior knowledge of
the patent-in-suit, but also why "once aware [of the patent], it was obvious their mobile
applications risked infringement . . .").

loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  July 12, 2016

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

19